# In the United States Bankruptcy Court
# for the
# Southern District of Georgia
## Savannah Division

| | | |
|---|---|---|
| In the matter of: | ) | |
| | ) | Chapter 11 Case |
| HAMILTON STACY | ) | |
|   PROPERTIES, L.L.C. | ) | Number <u>10-40140</u> |
| | ) | |
| *Debtor* | ) | |
| | ) | |
| | ) | **FILED** |
| | ) | Samuel L. Kay, Clerk |
| FIRST NATIONAL BANK | ) | United States Bankruptcy Court |
| | ) | Savannah, Georgia |
| *Movant* | ) | By lbarnard at 1:39 pm, Jul 13, 2010 |
| | ) | |
| v. | ) | |
| | ) | |
| HAMILTON STACY | ) | |
|   PROPERTIES, L.L.C. | ) | |
| | ) | |
| *Respondent* | ) | |

## MEMORANDUM AND ORDER
## ON MOTION FOR RELIEF FROM STAY

Debtor's case was filed on January 21, 2010. First National Bank ("Movant" or "Bank") filed a Motion for Relief from Stay on February 4, 2010, which was tried before this Court on June 8, 2010. At the conclusion of that trial I ruled that the Motion for Relief from Stay would be denied for reasons that were stated on the record. This Order is entered to more fully articulate the basis for my ruling.

Debtor originated a loan with First National Bank in the amount of $1,497,000.00.[1] The loan was a construction loan to enable the Debtor LLC's sole member, Patricia Hamilton Stacy, to construct a residence on a previously developed lot at The Landings, a gated development in Chatham County, Georgia. Debtor demolished an existing structure and built a five bedroom home with heated square footage of at least 9,000 square feet on a lot which overlooks a creek in one direction, expansive marshes looking eastward to the Atlantic Ocean, and which is bounded on one side by a golf course. The property enjoys an excellent view, and has some access to a tidewater creek which leads to the Wilmington River, and ultimately to the Atlantic Ocean. A view to the southwest across the golf course affords some sunset views and there are also sunrise views looking east.

The loan was renewed on more than one occasion. The loan most recently matured in June 2009, and because it was not paid at that time, and because Debtor was unable to satisfy the Bank debt, the Bank initiated a non-judicial foreclosure which would have resulted in a foreclosure sale the first Tuesday in February 2010.

Debtor filed its case following the initiation of foreclosure proceedings. On the date of filing Debtor owed $1,640,000.00 to the Bank. Interest at the default rate under the contract accrues at a rate of $19,000.00 per month and the Movant therefore contends that the balance as of the date of the hearing of this Motion was $1,740,000.00. Debtor contends

---

[1] Except where the precise number is material I will utilize rounded or approximate numbers throughout this opinion.

that a lower rate of interest should be applied and therefore the interest accrues at a rate of approximately $6,000.00 per month. However, it is not necessary for the Court to determine the appropriate interest rate for the purposes of this Order.

Debtor has attempted to sell the home since June of 2008, initially listing it at $3.6 million. It was reduced in January of 2010 to $2,495,000.00 due to lack of activity. Movant sent the required statutory notice of its intent to assess an additional fifteen percent as attorney's fees in addition to principal and interest pursuant to O.C.G.A. § 13-1-11(a)(3). However, Debtor's case was filed prior to expiration of the ten notice day period required by that code section. It was conceded for the purposes of this Motion, based on this Court's prior precedent, that the statutory attorney's fees had not vested. *See* Matter of Rice, 82 B.R. 623, 626-27 (Bankr. S.D. Ga. 1987) (Davis, J.). However, also under existing precedent Movant would arguably be entitled to collect its actual attorney's fees incurred to the extent the property is oversecured under § 506. *See e.g.,* In re Welzel, 275 F.3d 1308, 1314-15 (11th Cir. 2001) (noting that 11 U.S.C. § 506(b) entitles an oversecured creditor to contractually set attorney's fees, but holding that they must be reasonable).

Movant contends that Debtor's filing the case on the eve of foreclosure in order to avoid the vesting of the statutory attorney's fees is evidence of bad faith. Movant seeks dismissal of the case under a companion motion on which the Court is not ruling at this time. However, Debtor argues that there were reasons for filing other than avoiding the vesting of attorney's fees. Debtor argues first that the foreclosure notice purported to be

foreclosing the Bank's interest in $100,000.00 of furnishings and personal property located inside the residence, in which the Bank had no security interest. Second, Debtor argues that because it believed it had substantial equity it was necessary to file this case in order to preserve that equity to protect unsecured creditors. Debtor has unsecured non-insider claims in its case of over $100,000.00 and insider claims of another $450,000.00 or more, all of which could be paid if its perceived value of the property is ultimately recognized by the market. Debtor believes it has reasonably good prospects for the sale of this property because the market seems to be improving, it has a tenant in place in the house paying $5,000.00 per month in rent (and who has a right of first refusal should another offer come in), and because at least one real estate investor prospect appears extremely interested in purchasing the property at some future time.

Both parties hired appraisers who were qualified by the Court as experts. Movant's appraiser, Brian Connor, concluded a value of the property of $1,750,000.00. Debtor's appraiser, John Ganem, reached a conclusion of $2,350,000.00. Both reports were stipulated as evidence into the record.

After hearing the experts' testimony and reviewing their reports, I conclude that there is no perfect comparable, despite substantial efforts by the appraisers to find one. Many of the comparables located at The Landings on similar sites as the subject property were homes with substantially less square footage, many of them half the size of the subject property. *See* Connor Appraisal, Exhibit M-3. Ganem's comparables—he looked outside

The Landings development to find property which might more closely resemble the unique view or the water access the subject property enjoys—are helpful but imperfect matches due to the different neighborhoods in which they are located. *See* Ganem Appraisal, Exhibit R-1.

Both appraisers, however, utilized as a comparable property located on The Landings at 7 Little Comfort Road. Ganem adjusted its December 2009, $2.4 million sale to an adjusted value of $2,344,000.00. Connor adjusted the same sale to $2,175,000.00. Realizing that no single comparable is controlling, but agreeing with both appraisers that this is the most useful comparable, I conclude that the real estate is worth a minimum of $2 million for the purposes of this Motion. I may later find that it is worth more as a result of evidence received at a subsequent hearing or because of changed market conditions. However, utilizing that value I conclude that in a worst case scenario in which First National Bank is allowed its default rate of interest, is allowed to charge its actual attorney's fees incurred and a typical realtor's commission, the aggregate necessary for the estate to realize some equity would be less than $1.9 million.

Given an equity cushion of $100,000.00, there is certainly adequate equity at this time for the Court to conclude, as I do, that the Movant has not made its case of showing lack of equity. As a result, it is unnecessary to consider whether the property is necessary to an effective reorganization, as that burden only shifts to Debtor when the creditor has already proven a lack of equity under 11 U.S.C. § 362(d)(2)(B). Because the property is being marketed, and because the Court has been assured that Debtor's disclosure

statement and plan will be filed within thirty days and a final hearing on confirmability and feasibility will be held, I conclude that First National Bank has a sufficient equity cushion for its interest to be protected at this time.

Debtor's plan as verbally articulated calls for a sale of the property or surrender to the Bank within a one year period of the effective date of the plan. As stated at the hearing, I reach no conclusion as to whether the plan is confirmable at this time. I have arrived at no final determination of value, have not concluded at what interest rate post petition interest will be permitted to accrue, and do not know now what market conditions will be ninety days in the future. Suffice it to say that Debtor should redouble its efforts to aggressively market this property within as short a time frame as possible.

## ORDER

For the foregoing reasons, the Motion for Relief from Stay is DENIED on an interim basis and a final hearing will be set for the same date and time as confirmation of Debtor's plan or such earlier time as a party in interest may request that the matter be placed back on the calendar.

_____
Lamar W. Davis, Jr.
United States Bankruptcy Judge

Dated at Savannah, Georgia
This 9th day of July, 2010.